IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RANDY MITCHELL,                          :
                                         :
         Plaintiff,                      :
                                         :
    v.                                   :   CIVIL ACTION NO.
                                         :   1:05-CV-2349-JOF
MILTON E. NIX, JR., et al.,              :
                                         :
         Defendants.                     :

**OPINION AND ORDER**

This matter is before the court on Plaintiff's request for entry of default [25-1]; Plaintiff's motion for summary judgment [26-1]; Defendants' cross-motion for summary judgment [31-1]; Plaintiff's motions to amend his complaint [34-1 and 47-1]; Plaintiff's motions to compel [36-1 and 49-1]; Plaintiff's motion for appointment of counsel [36-1]; and Defendants' motion to withdraw counsel [52-1].

**I.     Background**

    **A.     Procedural History**

On September 7, 2005, Plaintiff filed a complaint against the members of the Georgia State Board of Pardons and Paroles (the Board) and two Board employees, W.C. Davis, Assistant Director of Parole Selection, and Tracy Masters, Director of Legal Services, in their individual and official capacities [Doc. 3 at 1]. Plaintiff amended his complaint on January

3, 2006. Plaintiff states that he has been serving a life sentence for murder since 1976 and has been denied parole "basically every year" since 1983 [Doc. 1, ¶ IV]. Plaintiff claims that in May 2005, for the first time, he received a notice from Davis that a precondition for his release on parole would be the successful completion of a sexual offender counseling program [*Id.*; Doc. 3 at 1]. Plaintiff states that Masters responded to his inquiry regarding this new requirement by stating, "Board members suspect there was a sexual component to [his] crime" [Doc. 3 at 1]. Plaintiff seeks to have "the sex offender label" removed and to be considered for parole "for the crime [he] was convicted of only" [Doc. 1, ¶ V]. He also seeks monetary damages. [*Id.*] In light of Plaintiff's allegations, and in deference to his *pro se* status, in an order dated May 31, 2006, the court allowed his claims to proceed based on the alleged violations of his due process rights under the Fourteenth Amendment and his privileges against self-incrimination and compelled speech under the Fifth and First Amendments, respectively. (The court dismissed Plaintiff's Ex Post Facto claim at the frivolity screening.)

### B.     Preliminary Matters

#### 1.     Motion for Appointment of Counsel

Plaintiff seeks the appointment of counsel. "Appointment of counsel in civil cases is . . . a privilege justified only by exceptional circumstances, such as the presence of facts and legal issues . . . so novel or complex as to require the assistance of a trained practitioner. The key is whether the *pro se* litigant needs help in presenting the essential merits of his or her

2

position to the court." *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993) (citation and internal quotations omitted). Plaintiff's claims are not sufficiently novel or complex to warrant the appointment of counsel. Furthermore, the court notes that Plaintiff has shown himself capable of articulating his complaints and addressing Defendants' arguments. Accordingly, the court DENIES Plaintiff's motion for appointment of counsel [36-1].

### 2. Motions to Amend Complaint

In his initial complaint, Plaintiff argued that Defendants had violated his due process rights because they had not provided him a hearing before classifying him as a sex offender. He also asserted that successful completion of the sex offender counseling program would compel him to admit he is a sex offender. Requiring Plaintiff to complete such a program prior to his release on parole violated his Fifth Amendment rights against self-incrimination, as well as his First Amendment rights against compelled speech.

In his first motion to amend his complaint, Plaintiff now claims that Defendants imposed the sex offender counseling program precondition to parole in retaliation for his having maintained his innocence "for 30 years" [Doc. 34]. In his second motion to amend, Plaintiff claims that Defendants violated his constitutional rights by arbitrarily "finding [him] guilty of a 'sexual component'" without sufficient evidence to support that finding [Doc. 47]. Plaintiff states that the medical examiner at his trial testified that the victim had not engaged in sexual activity at or near the time of her death and that there was no indication that her "rolled up" panties were the result of an attempted sexual assault [*Id.* Supp. Br. at 3].

3

"The decision whether to grant leave to amend is within the sound discretion of the trial court." *O'Brien v. Union Oil Co.*, 699 F. Supp. 1562, 1571 (N.D. Ga. 1988) (Forrester, J.). Once an adverse party has filed a responsive pleading, a party may amend its original pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

> Nevertheless, a motion to amend may be denied on numerous grounds, such as undue delay, undue prejudice to the defendants, and futility of the amendment. Moreover, it is not an abuse of discretion for a district court to deny a motion for leave to amend following the close of discovery, past the deadline for amendments, and past the deadline for filing dispositive motions.

*Carruthers v. BSA Adver., Inc.*, 357 F.3d 1213, 1218 (11th Cir. 2004) (citation and internal quotations omitted).

> In addition, courts may consider such factors as the amount of time and opportunities the movant has had to seek leave to amend, whether the proposed amendment is such that [it] could have been added shortly after the complaint was filed, whether allowance of the proposed amendment would . . . [require] additional discovery, whether the movant has attempted to justify any delay, and whether the impetus behind the filing of the motion was the prior filing of a motion for summary judgment after full discovery.

*O'Brien*, 699 F. Supp. at 1571-72 (denying a motion for leave to amend the complaint fifteen months after the complaint was filed and three months after discovery closed, in part because "the facts necessary to support plaintiff's proposed amendments were available to plaintiff early in the discovery period, if not before this action was commenced," and also because "it is clear that defendant would be prejudiced by the allowance of plaintiff's proposed

4

amendments at this late date," inasmuch as defendant's motion for summary judgment did not address the "two new and distinct legal claims" set forth in the proposed amendments).

Plaintiff filed both of his motions to amend after he and Defendants had filed their respective motions for summary judgment and after Defendants had responded to Plaintiff's summary judgment motion. [*See* Docs. 26, 31]. None of the assertions made by Plaintiff in his purported amendments was unknown to Plaintiff at the time he filed his original complaint. Accordingly, for the reasons set forth above regarding undue delay, the court DENIES Plaintiff's motion to amend [34-1] and DENIES Plaintiff's motion to amend [47-1].[1] Nevertheless, to the extent that Plaintiff's second motion to amend is merely an attempt to elaborate upon his previous claims, the court will consider any information contained therein in ruling on the parties' motions for summary judgment.

### 3. Motion for Default Judgment

---

[1]Moreover, the court notes that Plaintiff seems to suggest that Defendants waited at least twenty-two years to retaliate against his protestations of innocence [Doc. 34]. "[T]he gist of a retaliation claim is that a prisoner [was] penalized for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1249 (11th Cir. 2003). To state such a claim, a plaintiff must establish, *inter alia*, "that there is a causal connection between the retaliatory actions" and the protected speech. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). The gap of twenty-plus years between Plaintiff's first exercise of his freedom of speech and Defendants' alleged retaliation is too great to establish a causal connection between the two. Therefore, Plaintiff's retaliation claim is patently without merit. *See, e.g.*, *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (noting, in the employment context, that courts "that accept mere temporal proximity" as prima facie evidence of a causal connection between a plaintiff's protected activity and a defendant's retaliatory action "uniformly hold that the temporal proximity must be very close") (internal quotations omitted).

Plaintiff filed his original complaint on September 7, 2005, and an amended complaint on January 3, 2006 [Docs. 1, 3]. On June 13, 2006, requests for waiver of service were mailed to Defendants, notifying them of Plaintiff's lawsuit [Docs. 8-14]. On August 18, 2006, all Defendants filed answers to Plaintiff's original and amended complaints [Docs. 23, 24].

On August 21, 2006, Plaintiff submitted his request for entry of default judgment against Defendants Masters and Davis for allegedly failing to plead or otherwise defend against his lawsuit [Doc. 25]. However, both the answer to Plaintiff's complaint and the answer to Plaintiff's amended complaint are clearly made on behalf of all Defendants, including Masters and Davis. Because Masters and Davis answered Plaintiff's complaint, the court DENIES Plaintiff's motion for default judgment [25-1].

####    4.    Discovery Motions

In his first discovery motion, filed on October 19, 2006, Plaintiff seeks an extension of discovery so that he may receive and consider Defendants' responses to his discovery requests [Doc. 36]. In his second discovery motion, filed on December 7, 2006, Plaintiff seeks an order requiring Defendants to respond fully to his prior interrogatory about five sex offenders whom Defendants have identified as having been paroled from Georgia prisons without successful completion of a sex offender counseling program [Doc. 49]. Previously, Plaintiff had asked Defendants to disclose when and why these sex offenders were paroled, but Defendants declined to do so. [*Id.* Supp. Br. at 1]. Plaintiff claims that this information is relevant not only because these five individuals are convicted sex offenders, unlike Plaintiff, but also because, Plaintiff speculates, none of them was serving a life sentence or had protested his innocence [*Id.* at 2; *see* Doc. 35-2, ¶ 13]. Defendants respond that the information Plaintiff requests is not only irrelevant to these proceedings but also protected as a state secret pursuant to O.C.G.A. § 42-9-53 and Board Rule 475-3.09. [Doc. 50 at 2-4].

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "[A] district court can deny a motion to compel further discovery if it concludes that the questions are irrelevant." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999). "[A] district court is allowed a range of choice" in

7

deciding whether to grant or deny a motion to compel discovery responses, which decision will stand unless it constitutes an abuse of discretion. *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 837 (11th Cir. 2006) (internal quotations omitted).

As an initial matter, the court notes that rather than engage in a period of discovery, Plaintiff immediately filed a motion for summary judgment less than one week after Defendants answered Plaintiff's complaint. Defendants were then forced to file their own cross-motion for summary judgment less than a month later after having secured an extension of time from the court. Thus, Plaintiff's second motion to compel was filed after the majority of the briefing on summary judgment motions was completed.

In any event, Plaintiff's first discovery motion is now moot, as it appears that Defendants have responded to all of Plaintiff's discovery requests to his satisfaction, with the exception of the specific requests set forth in Plaintiff's second discovery motion. [*See* Docs. 38-44.] Accordingly, the court DENIES AS MOOT Plaintiff's motion for discovery [36-1].

Plaintiff's second motion to compel applies to Plaintiff's Interrogatory No. 13 which asks: "Have any convicted sex offenders been granted parole without completing the sex offender counseling program? If so, when? Why?" Defendants responded with a list of five names of inmates who had been paroled without completing the program. Defendants refused to provide any additional information on these inmates. Plaintiff contends that additional

8

information is relevant because he needs to know whether these inmates had received a life sentence or were proclaiming their innocence.

The court notes, however, that Plaintiff's attempt to add a "retaliation" claim was made too late in the litigation. Thus, any information concerning whether these five inmates proclaimed their innocence is irrelevant to Plaintiff's complaint as it now stands. Furthermore, the issue is not why these inmates failed to complete the sex offender counseling program. Rather, the issue is whether an individual who has failed to complete the program can gain parole.

For the same reason, it is not immediately clear to the court whether these individuals were serving a life sentence is relevant to Plaintiff's claims. The court takes judicial notice, however, that the release dates for the five former prisoners are available on the Georgia Department of Corrections website, www.dcor.state.ga.us. The term of the sentence imposed on these inmates is also available at the Department's website. This would appear to defeat Defendants' assertion that such information is "state secret" pursuant to O.C.G.A. § 42-9-53. Because the court has access to the information concerning the sentences these inmates received and can consider this in ruling on the parties' motions for summary judgment, the court DENIES AS MOOT Plaintiff's motion for discovery [49-1].

9

**II.    Cross Motions for Summary Judgment**

   **A.    Facts**

On March 18, 1976, Plaintiff was charged with murder in Fulton County. A Fulton County Detective testified at a later hearing that Plaintiff admitted to the murder and said the victim reminded him of his mother. Plaintiff was convicted by a jury on August 19, 1976. His appeals were denied. Plaintiff became eligible for parole in 1983. Between March 1983 and March 2005, Plaintiff was considered for parole twenty times. Each time he was denied parole with no parole preconditions mentioned.

In March 2005, the Board sent Plaintiff a letter setting a parole precondition of completion of a sex offender counseling program. The letter setting the precondition for parole states: "You are to successfully complete a sex offender counseling program prior to any release on parole. Failure to do so will result in a decision to delay or deny parole release." He was scheduled for parole reconsideration in April 2006. Plaintiff sent a letter asking why the precondition had been set. The Board responded on August 23, 2005, and informed Plaintiff that the precondition was set because the victim's husband reported that when he found his wife's body, her bathrobe had been pulled up and her underwear pulled over exposing her genitals. The Board concluded from this information that the crime had a sexual component to it.

The Board has not designated Plaintiff as a "sex offender." Pursuant to O.C.G.A. § 42-1-12(a)(20), this determination is made once an inmate is placed on parole. Whether Plaintiff

10

completes the sex offender counseling program or not does not impact whether he will receive parole. "The Board members have simply concluded that it is in Mitchell's best interest and interest of society that he successfully complete said program. If he refuses to enter the program or fails to successfully complete it, the Board will take this information into consideration when it next considers him for parole." *See* Masters Aff., ¶ 17. The Georgia Department of Corrections has not classified Plaintiff as a "sex offender." *See* Roberson Aff., ¶ 5.

The Board has paroled the following individuals who did not successfully complete a sex offender counseling program: David Sisson, Monroe Nealy, Kenya Johnson, Jason Burchfield, and Paul Booth.

The Board considered Plaintiff again for parole in May 2006. Completion of a sex offender counseling program was again set as a precondition of parole. Plaintiff's next parole reconsideration is in April 2007.

In his statement of facts, Plaintiff asserts three additional facts which are disputed by Defendants: (1) Masters did not advise Davis to give Plaintiff a hearing before installing the sex offender counseling program requirement, (2) Plaintiff did not receive a hearing to contest the basis for the counseling program requirement, and (3) to complete the counseling program, an inmate has to admit to a sex crime. Plaintiff also asserts that at trial, a medical examiner testified that there was no evidence to indicate sexual activity at the time of the

11

victim's death. For the purposes of addressing the parties' motions for summary judgment, the court assumes that these facts are accurate.

### B.    Contentions

Defendants argue that Plaintiff has never been classified as a "sex offender" so as to trigger due process protections. Rather, Defendants contend that whether to grant an inmate parole is an entirely discretionary decision in the Georgia system. As part of the Board's discretion, it may recommend certain treatment programs for an inmate. The inmate's failure to complete such a program may be considered by the Board as one of the factors in its decision whether to grant an inmate parole, but it does not automatically preclude the inmate from consideration for parole. Defendants further aver that because Plaintiff is not automatically precluded from parole consideration, his Fifth Amendment and First Amendment claims also fail because he is not compelled to admit any participation in a sex offense.[2]

Plaintiff responds that Defendants have classified him as a sex offender based on the definition of "to classify" found in the dictionary which is to arrange in a class or assign according to a category. Plaintiff further contends that due to the parole precondition, he is

---

[2]Defendants also argue that suit against them in their official capacities is barred by the Eleventh Amendment immunity; that Plaintiff's monetary claims against Defendants in their individual capacities are barred by qualified immunity. Finally, Defendants argue that suit against Board members is barred by absolute quasi-judicial immunity. The court need not reach these viable defenses as the court finds that Plaintiff's underlying constitutional claims are without merit.

12

now stigmatized in the prison and people ask him about his "sex offense." Thus, Plaintiff argues that he is entitled to due process protections, and he did not receive a hearing before being classified as a sex offender. Plaintiff further avers that his Fifth and First Amendment rights have been violated because he contends he will not be granted parole unless he participates in a sex offender counseling program which would require him to admit guilt in a sexual offense.

### C. Due Process Claim

The court previously addressed the specific nature of Plaintiff's due process claim in its May 31, 2006 order. There, the court held "Plaintiff has a constitutionally protected liberty interest in avoiding classification as a sex offender, and he cannot be deprived of that interest without due process of law. *See Kirby v. Siegelman*, 195 F.3d 1285, 1292 (11th Cir. 1999) (stating that "[a]n inmate who has never been convicted of a sex crime is entitled to due process before the state declares him to be a sex offender.")." *See* Order, at 4.

In *Kirby*, inmates brought a class action suit against the Alabama Department of Corrections alleging that the application of the Alabama sex offender community notification statute to them violated their constitutional rights. One plaintiff, Robert Edmond, was serving a twenty-year sentence for attempted murder. The Alabama Department of Corrections classified Edmond as a "sex offender" based on two previous sex-related charges (but not convictions) of rape and sexual abuse. Edmond's classification as a "sex offender" meant that he had to participate in group therapy sessions while in prison and also made him ineligible

13

for a minimum custody classification which precluded his participation in certain work-release programs and community custody programs. The court concluded that the "stigmatizing effect of being classified as a sex offender constitutes a deprivation of liberty under the Due Process Clause." 195 F.3d at 1292.

Significantly, however, the Alabama Department of Corrections had classified and labeled Edmond as a sex offender through Department regulations which specified that "inmates with two or more arrests of record for sex crimes for which the disposition is unknown or given as dismissed, no billed, nolle prossed, etc., will be construed as sex offenders for the purpose of classification." *Id.* at 1291. Here, in contrast, Defendants presented the testimony of Defendant Masters and Ms. Roberson, both of whom state that Plaintiff has not been classified as a sex offender in the Georgia prison system, and his status in the system has not been altered as a result of any alleged status as a sex offender. Applicability of the Georgia statute governing the State's Sexual Offender Registry is not determined until an inmate is paroled. Thus, Plaintiff is not in the same position as Edmond. He has not been ordered to participate in a sex offender counseling program as a condition of his imprisonment, nor has he alleged that his placement in a particular prison was determined by any status as a "sex offender." Rather, the Board has placed as a precondition for parole Plaintiff's participation in a sex offender counseling program. This recommendation is akin to other recommendations made by the Board concerning treatment for inmates as part of their consideration for parole.

14

Plaintiff has not adduced any evidence to dispute Defendants' testimony that he has never been classified as a sex offender. Plaintiff, however, does argue that according to Webster's New Collegiate Dictionary, the definition of "to classify" is "to arrange in a class" or "to assign to a category." Plaintiff contends that by setting a precondition of sex offender counseling, Defendants have "arranged" or "assigned" Plaintiff. Such an arrangement or assignment, however, does not trigger any constitutional protections unless it is done in a legally significant manner.

Because Defendants have not classified Plaintiff as a sex offender according to any statue or regulation, the court finds this situation more akin to that in *Grennier v. Frank*, 453 F.3d 442 (7th Cir. 2006) (Easterbrook, J.). There, a state prisoner convicted of first-degree murder and sentenced to life imprisonment challenged the denial of his parole applications based on his classification as a sex offender. Although the plaintiff's offense had not been classified as a "sexual offense," the plaintiff's applications for parole were denied in part based on the fact that "the populace would not be safe with him at large unless he has completed treatment for sexual disorders." *Id.* at 444. The Seventh Circuit denied the plaintiff's due process claim because a sex offender label alone did not trigger the protection of a due process hearing, rather it was the liberty or property interests stemming from the statutes or regulations that distinguished the plaintiff in *Kirby*. *Id.* at 445. Citing *Paul v. Davis*, 424 U.S. 693 (1976), the court stated that the mere public accusation of a crime by the state does not implicate a liberty interest. *Id.* at 445-46 (Grennier does not have a "liberty

15

or property interest in the prospect of parole under Wisconsin's discretionary system. It follows that the state need not afford him hearings on any of the subsidiary factual questions – such as whether his offense was particularly brutal, what risk of recidivism he would pose if released, and whether any of the new crimes might be sex offenses.").

Although some cases have described a "circuit split" between *Kirby* and *Grennier*, the court views the cases as distinguishable. It is clear from the recitation of facts in *Kirby* that Edmond had specifically been designated as a sex offender, and this designation affected the conditions of his confinement. This is not the situation with Plaintiff here.

For the foregoing reasons, the court GRANTS Defendants' cross-motion for summary judgment and DENIES Plaintiff's motion for summary judgment on Plaintiff's due process claim.

### D. Fifth and First Amendment Claims

In its May 31, 2006 frivolity screening order allowing some of Plaintiff's claims to proceed, the court thoroughly addressed the Supreme Court's opinion in *McKune v. Lile*, 536 U.S. 2 (2002). Of significance in the *McKune* holding is that "the automatic nature of the consequence" of remaining silent is "a necessary condition to finding unconstitutional compulsion," and, in that regard, the plurality distinguished situations in which states award "early parole for inmates who accept responsibility[,] because silence in these circumstances does not automatically mean the parole board, which considers other facts as well, will deny them parole." *Id.* at 44.

The Board informed Plaintiff by letter that: "You are to successfully complete a sex offender counseling program prior to any release on parole. Failure to do so will result in a decision to delay or deny parole release." Defendants have presented evidence that failure to complete the sex offender counseling program does not ***automatically*** mean parole will be denied in the form of five inmates who were paroled without completing the program. Furthermore, Defendant Masters presented undisputed testimony that the "Board members have simply concluded that it is in Mitchell's best interest and interest of society that he successfully complete said program. If he refuses to enter the program or fails to successfully complete it, the Board will take this information into consideration when it next considers him for parole." *See* Masters Aff., ¶ 17. In fact, the court notes that despite the

17

fact Plaintiff has refused to participate in a sexual offender counseling program, Plaintiff has been considered for parole, although parole was denied.

Plaintiff contends that the five inmates proffered by Defendants are not similarly situated to him because none was sentenced to a life sentence. Plaintiff is correct that none of these inmates was serving a life sentence; rather, their sentences range from seven to twenty years' imprisonment. The court finds that this distinction is not determinative under these circumstances. The key factor is whether Plaintiff's failure to participate in the sex offender program automatically precludes him from consideration for parole, and there is no evidence that this is the case here. The Board may consider all relevant information concerning Plaintiff during parole consideration. The fact that Plaintiff was sentenced to a life sentence is a fact that would be considered by the Board even in the absence of the sex offender counseling program issue.

Several circuits that have taken up this issue after *McKune* have rejected inmates' Fifth Amendment compulsion claims under similar circumstances. *See Gwinn v. Awmiller*, 354 F.3d 1211, 1227 n.9 (10th Cir. 2004); *Thorpe v. Grillo*, 80 Fed. Appx. 215 (3d Cir. 2003) (unpublished decision) (holding no Fifth Amendment violation where inmate who refused to participate in sex offender counseling was not automatically denied consideration for parole); *Ainsworth v. Risley*, 244 F.3d 209, 214 (1st Cir. 2001) (holding that inmate's reduced likelihood of parole for refusing to participate in a sex offenders program did not constitute

"penalty" sufficient to compel incriminating speech in violation of Fifth Amendment). Thus, Plaintiff's Fifth Amendment claim fails.

Because there is no automatic consequence to Plaintiff's failure to complete the counseling program, Plaintiff's First Amendment claim also fails. *See C.N. v. Ridgewood Board of Education*, 430 F.3d 159, 189 (3d Cir. 2005) (a "violation of the First Amendment right against compelled speech occurs only in the context of actual compulsion. In order to compel the exercise . . . of speech, the governmental measure must punish, or threaten to punish, protected speech by governmental action that is regulatory, proscriptive, or compulsory in nature.").

For the foregoing reasons, the court GRANTS Defendants' cross-motion for summary judgment on Plaintiff's Fifth and First Amendment claims and DENIES Plaintiff's motion for summary judgment on those claims.

In sum, the court DENIES Plaintiff's motion for summary judgment and GRANTS Defendants' cross-motion for summary judgment.

### III. Conclusion

The court DENIES Plaintiff's request for entry of default [25-1]; DENIES Plaintiff's motion for summary judgment [26-1]; GRANTS Defendants' cross-motion for summary judgment [31-1]; DENIES Plaintiff's motions to amend his complaint [34-1 and 47-1]; DENIES Plaintiff's discovery motions [36-1 and 49-1]; DENIES Plaintiff's motion for appointment of counsel [36-1]; and GRANTS Defendants' motion to withdraw counsel [52-1].

The Clerk of the Court is DIRECTED to DISMISS WITH PREJUDICE Plaintiff's complaint.

**IT IS SO ORDERED** this 8th day of March 2007.

                                             s/ J. Owen Forrester
                                             J. OWEN FORRESTER
                                   SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)